OSCAR RAINEY          \*        NO. 2022-CA-0616

                              \*

VERSUS                 COURT OF APPEAL

                              \*

RAVEN BARTHOLOMEW      FOURTH CIRCUIT

                              \*

                           STATE OF LOUISIANA

             \* \* \* \* \* \* \*

APPEAL FROM
SECOND CITY COURT OF NEW ORLEANS
NO. 2022-00791, "D"
Honorable Nadine Ramsey, Judge
\* \* \* \* \* \*
**Judge Dale N. Atkins**
\* \* \* \* \* \*

(Court composed of Chief Judge Terri F. Love, Judge Dale N. Atkins, Judge
Rachael D. Johnson)

Yves Gelin
2029 Beck Street
New Orleans, LA 70131

      COUNSEL FOR PLAINTIFF/APPELLEE, Oscar Rainey


Alexis Erkert
SOUTHEAST LOUISIANA LEGAL SERVICES
1340 Poydras Street, Suite 600
New Orleans, LA 70112


      COUNSEL FOR DEFENDANT/APPELLANT, Raven Bartholomew

                                        **REVERSED**
                                  **February 13, 2023**

This is an eviction case. Defendant-appellant, Raven Bartholomew ("Kilo"),[1] seeks review of the August 2, 2022 judgment of the Second City Court for the Parish of Orleans ("Second City Court"), which granted the Rule for Possession of Premises ("Rule for Possession") filed by plaintiff-appellee, Oscar Rainey ("Mr. Rainey"), and ordered Kilo to vacate the subject premises by August 22, 2022. For the following reasons, we reverse Second City Court's judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On January 19, 2022, Kilo and Mr. Rainey signed a "Residential Lease" ("Lease"), whereby Kilo leased a home located at 933 Vallette Street in New Orleans, Louisiana, from Mr. Rainey. The Lease provided for a rental term of January 19, 2022, to January 31, 2023. Additionally, the Lease required Kilo to pay a monthly rental amount of $775 to Mr. Rainey by the first day of the month and to pay late fees if Kilo did not timely pay the rent according to "Clause 5. Payment of Rent."[2] Also of relevance, the Lease stated that Kilo could not have guests for longer than two days without Mr. Rainey's prior consent per "Clause 3. Limits on Use and Occupancy" ("Use and Occupancy clause"). Another portion of the Lease, "Clause 11. Tenant's Maintenance Responsibilities" ("Maintenance clause"), required Kilo to keep the premises in "good condition" and to reimburse Mr. Rainey for any damage caused by Kilo. "Clause 14. Pets" ("Pets clause") stated that Kilo could not have any animals or pets on the premises.

---

[1] According to the Appellant Brief, "Raven Bartholomew uses the gender neutral pronouns of they/them and uses the gender-neutral name 'Kilo' as both a first and surname." Therefore, this Opinion will refer to Raven Bartholomew as Kilo, they, them, or their.

[2] As discussed later in the Opinion, although the Lease listed a monthly rental payment of $775, the record demonstrates that Kilo paid a portion of this amount and a housing assistance agency subsidized the remainder of the rent.

Also on January 19, 2022, Kilo and Mr. Rainey signed a document entitled "Tenancy Addendum and VAWA Rights Addendum" ("Tenancy Addendum"). According to the Tenancy Addendum, a housing assistance agency would make payments to Mr. Rainey to assist Kilo in leasing the house at 933 Vallette Street. In pertinent part, the Tenancy Addendum stated that "[t]he landlord may only terminate the tenancy" for "[s]erious or repeated violation of the terms and conditions of the lease, if the lease violation continues after a written notice to cease and desist and opportunity to cure of at least [five] days . . . ." Further, the Tenancy Addendum stated that "[i]f there is any conflict between this Tenancy Addendum and any other provision of the [L]ease, the language of the Tenancy Addendum shall control. The tenant has the right to enforce this Tenancy Addendum against the landlord."

### Mr. Rainey's July 5, 2022 Rule for Possession

On July 5, 2022, Mr. Rainey filed a Rule for Possession. Therein, he alleged that Kilo owed past due rent and late fees and that Kilo had violated other provisions of the Lease. In particular, Mr. Rainey alleged that Kilo violated the Use and Occupancy, Maintenance, and Pets clauses contained in the Lease.

In addition to a copy of the Lease, Mr. Rainey attached to the Rule for Possession a June 30, 2022 "Notice to Terminate Tenancy;" a June 30, 2022 Letter from Mr. Rainey to Kilo; and a June 30, 2022 "Eviction Notice." In these documents, Mr. Rainey informed Kilo that he was terminating the Lease for Kilo's failure to timely pay their rent and for their violations of the Lease.[3] Further, in

---

[3] As in the Rule for Possession, in the Notice to Terminate Tenancy, Mr. Rainey alleged that Kilo violated the Lease by failing to timely pay their rent and violated the Use and Occupancy, Maintenance, and Pets clauses. However, in the

these documents, Mr. Rainey informed Kilo that they were to vacate the premises by July 5, 2022.

### *Kilo's August 1, 2022 Exceptions, Answer, and Affirmative Defenses*

In response to Mr. Rainey's Rule for Possession, Kilo filed a document entitled "Exceptions, Answer, and Affirmative Defenses to Rule for Possession of Premises" ("Exceptions, Answer, and Affirmative Defenses") on August 1, 2022.

In the "Exceptions" portion of the pleading, Kilo asserted, in pertinent part, that Mr. Rainey's Rule for Possession was premature because Mr. Rainey did not wait the requisite five days required by La. C.C.P. art. 4701 between his issuance of the notices to vacate on June 30, 2022, and his filing of the Rule for Possession on July 5, 2022. Specifically, Kilo argued that legal holidays intervened between those two dates and should not have been included in Mr. Rainey's computation of the five day period.

Next, in the "Answer" portion of the pleading, Kilo admitted that 933 Vallette Street was their domicile but denied every other allegation in the Rule for Possession.

Finally, in the "Affirmative Defenses" section of the pleading, Kilo argued, in part, that they had not violated the Use and Occupancy, Maintenance, and Pets clauses as alleged in the Rule for Possession. Additionally, regarding Mr. Rainey's allegation that Kilo owed past due rent and late fees, Kilo contended that they had attempted to tender payment to Mr. Rainey on June 28, 2022, but that he refused the payment.

---

Notice to Terminate Tenancy, Mr. Rainey also alleged that Kilo violated the Lease by failing to maintain the lawn at the subject premises.

### *August 2, 2022 Hearing and Judgment*

On August 2, 2022, Second City Court held a hearing on Mr. Rainey's Rule for Possession.[4] Counsel for Kilo reiterated that although Mr. Rainey provided notice to vacate to Kilo on June 30, 2022, Mr. Rainey's subsequent filing of the Rule for Possession on July 5, 2022, was premature because Mr. Rainey incorrectly included legal holidays in his computation of the five days' notice required by La. C.C.P. art. 4701. Regarding the alleged lease violations, counsel for Kilo contended that, in addition to the Lease, Kilo and Mr. Rainey signed the Tenancy Addendum, which required Mr. Rainey to provide Kilo with a notice to cease and desist and an opportunity to cure for lease violations before issuance of a notice to vacate. Counsel for Kilo contended that Mr. Rainey failed to provide the notice to cease and desist, as well as the opportunity to cure, for any alleged lease violations. Additionally, concerning Mr. Rainey's allegation that Kilo failed to timely pay their rent, counsel for Kilo again asserted that Kilo attempted to tender payment to Mr. Rainey on June 28, 2022, but that he refused the payment.

At the August 2, 2022 hearing, Second City Court ultimately denied Kilo's Exceptions; granted Mr. Rainey's Rule for Possession; and orally ordered Kilo to vacate the subject premises by August 22, 2022. On the same day of the hearing, August 2, 2022, Second City Court also signed a judgment ordering Kilo to vacate

---

[4] We note that Second City Court initially held a hearing and rendered a judgment of eviction in this matter on July 12, 2022. However, later that same day, Kilo filed a "Motion for New Trial," alleging that they were present in court for the hearing but did not hear the case called. Second City Court granted a hearing on Kilo's Motion for New Trial, ultimately setting both the Motion for New Trial and the Rule for Possession for August 2, 2022. At the August 2, 2022 hearing, Second City Court granted Kilo's Motion for New Trial prior to hearing arguments on the merits of Mr. Rainey's Rule for Possession and Kilo's Exceptions, Answer, and Affirmative Defenses.

by August 22, 2022, per the oral ruling. Additionally, on August 2, 2022, the day of the hearing and Second City Court's judgment, Kilo timely filed a Motion for Suspensive Appeal.[5]

## ASSIGNMENTS OF ERROR

On appeal, Kilo asserts three assignments of error:

I. Second City Court erred as a matter of law in finding that Kilo was afforded proper notice of eviction because Mr. Rainey filed the Rule for Possession before the [five]-day notice to vacate had run.

II. Second City Court erred in granting the eviction for lease violations where Mr. Rainey failed to meet his burden of proof that a serious or repeated violation of the lease occurred, and that such violation continued after a written notice to cease and desist and opportunity to cure of at least [five] days.

III. Second City Court erred in granting the eviction for nonpayment of rent where Kilo timely tendered more than the amount owed and Mr. Rainey failed to issue written opportunity to cure.

Prior to addressing the merits, we discuss the standard of review applicable in eviction proceedings.

## STANDARD OF REVIEW

"In an eviction proceeding, the appellate court reviews the trial court's factual findings for manifest error." *JoAnn Place v. Ricard*, 2022-0456, p. 10 (La. App. 4 Cir. 12/27/22), ___ So.3d ___, ___, 2022 WL 17959142, at *5 (citing *235 Holdings, LLC v. 235 Enters., LLC*, 2020-0658, p. 5 (La. App. 4 Cir. 12/15/21), 334 So.3d 862, 866). *See also PRCP-NS New Orleans, LLC v. Swanson*, 2022-0393, p. 15 (La. App. 4 Cir. 12/16/22), ___ So.3d ___, ___, 2022 WL 17729435, at

---

[5] In an eviction proceeding, an appellant must file a motion for suspensive appeal within twenty-four hours of the judgment of eviction. *See* La. C.C.P. art. 4735.

*7. "Under this standard of review, an appellate court 'must . . . find from the record that there is a reasonable factual basis for the [trial] court's findings of fact[,]' and 'the record must establish that the [trial] court's findings are not manifestly erroneous or clearly wrong.'" *Id.* (alteration in original) (quoting *Guste Homes Resident Mgmt. Corp. v. Thomas*, 2020-0110, p. 8 (La. App. 4 Cir. 7/29/20), 302 So.3d 1181, 1187). "Factual findings should not be reversed on appeal absent manifest error." *Id.* "'Where legal errors of the trial court have tainted the fact finding process' though, 'the verdict below is not reviewed under the manifest error standard and, if the record is complete, the appellate court may make a *de novo* review of the record and determine the preponderance of the evidence.'" *Id.*

"The appellate court also reviews an eviction matter *de novo* if the appeal presents a purely legal question." *Id.* (citing *235 Holdings, LLC*, p. 5, 334 So.3d at 867). "Additionally, in an eviction proceeding, 'when there is no dispute as to the dispositive facts, the issue can be decided as a matter of law and the review is *de novo*.'" *Id.* at pp. 10-11, ___ So.3d at ___, 2022 WL 17959142, at *5 (quoting *Affordable Care, LLC v. Martin*, 54,286, p. 14 (La. App. 2 Cir. 4/13/22), 337 So.3d 615, 623).

**DISCUSSION**

***Principles Applicable to Eviction Proceedings***

As this Court has previously stated, "[t]he provisions of La. C.C.P. arts. 4701, *et seq.*, provide a summary process for eviction of a lessee by a lessor because the lease has ended due to expiration of its term or for other lawful cause." *JoAnn Place*, 2022-0456, p. 11, ___ So.3d at ___, 2022 WL 17959142, at *5 (quoting *Affordable Care, LLC*, 54,286, pp. 7-8, 337 So.3d at 621). Because an

6

eviction can proceed via expedited process, "procedural protections must be strictly adhered to prior to an eviction to protect the rights of . . . a [lessee] . . . ." *Id.* (quoting *Housing Auth. of New Orleans v. Haynes*, 2014-1349, p. 24 (La. App. 4 Cir. 5/13/15), 172 So.3d 91, 104).

One such protection for the lessee in an eviction proceeding is the requirement of notice. Louisiana Code of Civil Procedure Article 4701 is titled "Termination of lease; notice to vacate; waiver of notice." It provides, in pertinent part:

> When a lessee's right of occupancy has ceased because of the termination of the lease by expiration of its term, action by the lessor, nonpayment of rent, or for any other reason, and the lessor wishes to obtain possession of the premises, the lessor or his agent shall cause written notice to vacate the premises to be delivered to the lessee. The notice shall allow the lessee not less than five days from the date of its delivery to vacate the leased premises.

This notice is a "prerequisite to the use of summary eviction procedure" and is an "essential requirement[] for a lessee to have due process of law." *Flores v. Gondolier, Ltd.*, 375 So.2d 400, 402-03 (La. App. 3rd Cir. 1979) (citations omitted). *See also JoAnn Place*, 2022-0456, p. 14, ___ So.3d at ___, 2022 WL 17959142, at *7 (stating that "[t]he notice to vacate is an essential part of the summary eviction procedure provided for in La. C.C.P. art. 4701" (quoting *Kushi Healthcare, L.L.C. v. St. James Behav. Health Hosp., Inc.*, 2015-0007, p. 9 (La. App. 1 Cir. 6/5/15), 174 So.3d 1192, 1198)).

In discussing La. C.C.P. art. 4701, this Court has emphasized that "'*proper* notice to vacate is a prerequisite to filing of the rule for possession . . . .'" *JoAnn Place*, 2022-0456, pp. 13-14, ___ So.3d at ___, 2022 WL 17959142, at *6 (quoting *Lichtentag v. Burns*, 258 So.2d 211, 213 (La. App. 4th Cir. 1972)). *See also PRCP-NS New Orleans, LLC*, 2022-0393, p. 16, ___ So.3d at ___, 2022 WL 17729435, at

7

*7). One aspect of notice being proper is that it allows the lessee at least five days to vacate the premises.[6] *See* La. C.C.P. art. 4701. *See also Flores*, 375 So.2d at 402 (explaining that "[a] lessor who desires to obtain possession of leased premises must give the lessee written notice and allow five days after its delivery for the lessee to vacate the premises" (citing La. C.C.P. art. 4731)[7]). If a lessor provides the lessee with fewer than five days to vacate before filing a rule for possession, then this does not constitute proper notice; and the trial court should dismiss the rule for possession. *See Lichtentag*, 258 So.2d at 213. This is because "[w]ithout [proper] notice, there can be no judgment issued under La. C.C.P. art. 4701." *JoAnn Place*, 2022-0456, p. 14, ___ So.3d at ___, 2022 WL 17959142, at *7 (quoting *Kushi Healthcare, L.L.C.*, 2015-0007, p. 9, 174 So.3d at 1198). *See also PRCP-NS New Orleans, LLC*, 2022-0393, p. 16, ___ So.3d at ___, 2022 WL 17729435, at *7. With these principles in mind, we turn to Kilo's first assignment of error.

***Whether Mr. Rainey Provided Proper Notice to Kilo***

In their first assignment of error, Kilo asserts that "Second City Court erred as a matter of law in finding that [they were] afforded proper notice of eviction because Mr. Rainey filed the Rule for Possession before the [five]-day notice to vacate had run." As discussed, Mr. Rainey issued notices to vacate on June 30, 2022, and filed the Rule for Possession on July 5, 2022. We must determine

---

[6] We say "at least five days" because this time period "is designed as a minimum period of time, and . . . more time may be allowed. It is only a lesser period of time which causes a violation . . . ." *Lichtentag*, 258 So.2d at 212-13.

[7] Louisiana Code of Civil Procedure Article 4731 is titled "Rule to show cause why possession should not be delivered; abandonment of premises; federally declared disasters."

8

whether this time period adhered to the five-day notice to vacate requirement of La. C.C.P. art. 4701.

Concerning the computation of time, La. C.C.P. art. 5059 provides:

A legal holiday is to be included in the computation of a period of time allowed or prescribed, except when:

(1) It is expressly excluded;

(2) It would otherwise be the last day of the period; or

(3) The period is less than seven days.

According to La. R.S. 1:55(A)(1), all Sundays and July 4 (Independence Day) are legal holidays in the state of Louisiana; and all Saturdays are legal holidays in the parish of Orleans. *See also PRCP-NS New Orleans, LLC*, 2022-0393, p. 6, ___ So.3d at ___, 2022 WL 17729435, at *3 (citing *Distefano v. A M & A, Inc.*, 338 So.2d 755, 757 (La. App. 4th Cir. 1976); *Lichtentag*, 258 So.2d at 212). Thus, if the subject time period is less than seven days, then Saturday, Sunday, and any other legal holidays are not included in the computation of time. La. C.C.P. art. 5059(3); *see id.*

For example, in *Lichtentag*, the lessor served a five-day notice to vacate on his lessee on Wednesday, November 4, 1970, and then filed a rule for possession on Tuesday, November 10, 1970. 258 So.2d at 211-12. This Court observed that "considering only calendar days, the [lessor] has followed the time period[] specified in [La. C.C.P. art. 4701]. However, this mathematical computation does not take into account intervening holidays." *Id.*, 258 So.2d at 212. In particular, this Court explained that the lessor had failed to account for three legal holidays, including Saturday, November 7, 1970; Sunday, November 8, 1970; and Wednesday, November 11, 1970 (Veterans' Day). *Id.* Accordingly, this Court

9

concluded that the lessor had not provided the lessee with the requisite five-day notice and affirmed the trial court's dismissal of the rule for possession. *Id.*, 258 So.2d at 213.

Turning to the timeline in the matter *sub judice*, Mr. Rainey provided Kilo with notices to vacate on June 30, 2022, and he filed the Rule for Possession on July 5, 2022. As in *Lichtentag*, considering only calendar days, Mr. Rainey followed the five-day notice requirement of La. C.C.P. art. 4701. However, because the five-day notice requirement of La. C.C.P. art. 4701 is fewer than seven days, we must be sure that this time period does not include any legal holidays. *See* La. C.C.P. art. 5059(3). We take judicial notice that the day Mr. Rainey provided Kilo with notice, June 30, 2022, was a Thursday; and we take judicial notice that the day Mr. Rainey filed the Rule for Possession, July 5, 2022, was a Tuesday.[8] Between Mr. Rainey providing Kilo with notice and filing the Rule for Possession, Saturday, July 2, 2022, and Sunday, July 3, 2022, are two legal holidays that intervened. La. R.S. 1:55(A)(1). Additionally, Monday, July 4, 2022 (Independence Day), is another legal holiday that occurred between the notice and the filing of the Rule for Possession. *Id.* Because there were only five calendar days between the notice and the Rule for Possession, when these three legal holidays are removed from the computation of time per La. C.C.P. art. 5059(3), it is clear that Mr. Rainey did not provide Kilo with the five-day notice required by La. C.C.P. art. 4701 before he filed the Rule for Possession.

---

[8] *See* La. C.E. art. 201(C), which states that "[a] court may take judicial notice, whether requested or not." Louisiana Code of Evidence Article 201(B)(2) provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is . . . [c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

As discussed, proper notice is a prerequisite to the filing of a rule for possession, and without proper notice there can be no judgment of eviction. Having determined that Mr. Rainey did not provide Kilo with proper notice, we conclude that Second City Court erred as a matter of law in granting Mr. Rainey's Rule for Possession. Therefore, we reverse Second City Court's August 2, 2022 judgment, which ordered Kilo to vacate the premises by August 22, 2022. In light of this conclusion, we pretermit discussion of Kilo's second and third assignments of error.

### DECREE

For the foregoing reasons, we reverse Second City Court's August 2, 2022 judgment, which ordered Kilo to vacate the subject premises by August 22, 2022.

**REVERSED**